[No. 11893-2-III.   Division Three.   May 4, 1993.]

THE STATE OF WASHINGTON, *Respondent,* v. FREDRICK JAMES MARTIN, *Appellant.*

*Gary R. Luloff* and *Bogle & Gates,* for appellant.

*Jeffrey C. Sullivan, Prosecuting Attorney,* and *Bruce Hanify, Deputy,* for respondent.

MUNSON, J. — Fredrick Martin appeals his conviction for driving while intoxicated, RCW 46.61.502, contending (1) the evidence was insufficient to support one of the alternative means included in the jury instructions, and (2) the prosecutor made improper remarks during closing argument.

About 4 a.m. on June 9, 1991, William Nash discovered his gray Chevrolet pickup was missing. At 4:15 a.m., after receiving the radio dispatch call reporting the vehicle theft, Deputy Sheriff Sara Munroe saw a pickup of the same description. She called for backup, followed the pickup and saw it swerve between the fog and center lines. The vehicle was traveling at 35 m.p.h. in a 50 m.p.h. zone.

When the pickup turned into a cemetery, Deputy Munroe activated her emergency lights. The driver of the pickup, later identified as Mr. Martin, got out of the vehicle and began walking away. Mr. Martin did not stop when ordered to do so. The deputy chased him, wrestled him to the ground and handcuffed him. She observed that he appeared unkempt and disoriented, was uncooperative, and had glassy eyes and slurred speech. Shortly thereafter, Deputy Munroe turned Mr. Martin over to tribal police. She did not administer breath alcohol or field sobriety tests.

Mr. Martin was tried on charges of taking a motor vehicle without permission and driving while intoxicated. The jury acquitted Mr. Martin of taking a motor vehicle but found him guilty of driving while intoxicated.

First, Mr. Martin contends the jury instruction[1] on the alternate means of committing the crime of driving while intoxicated deprived him of due process since it permitted the jury to predicate guilt on blood alcohol levels, despite the total absence of evidence on this alternative means.

■ The crime of driving while intoxicated may be committed by the alternative means of driving while under the influence of intoxicants, or having the statutorily specified percentage of alcohol in the blood or breath, as shown by a prescribed analysis. *State v. Franco*, 96 Wn.2d 816, 823, 639 P.2d 1320 (1982). If the jury is not required to be unanimous as to the means of the crime's commission, the evidence in support of each alternative means must be such that a rational trier of fact could have found each means of committing the crime was proved beyond a reasonable doubt. *State v. Kitchen*, 110 Wn.2d 403, 410, 756 P.2d 105 (1988); *Franco*, at 823. This requirement of sufficient evidence embodies constitutional considerations of due process. *See State v. Green*, 94 Wn.2d 216, 616 P.2d 628 (1980).

The deputy's testimony was sufficient to permit a rational trier of fact to find, beyond a reasonable doubt, that Mr. Martin was "under the influence of or affected by intoxicating liquor." The record, however, is devoid of evidence of Mr. Martin's blood or breath alcohol content as determined by any prescribed analysis. Instructing the jury on the blood or breath alcohol content as an alternative means of driving while intoxicated and expressly permitting the jury to base

---

[1]Instruction 9 states:

"A person commits the crime of Driving While Under the Influence of Liquor when he or she drives a motor vehicle while he or she: (1) Has 0.10 grams or more of alcohol per two hundred ten liters of breath as shown by accurate analysis of his or her breath, or 0.10 percent more by weight of alcohol in his or her blood or her blood as shown by analysis of his or her blood; or (2) is under the influence of or affected by intoxicating liquor. The above are alternate means of committing the single crime charged. *Your determination of the defendant's guilt or innocence may be based upon finding number (1) or finding number (2). These are alternative findings, and each of you may individually arrive at your own determination of the defendant's guilt or innocence based on either alternate method. Jury unanimity as to mode of commission is not required.*" (Italics ours.)

its decision on either alternative, in the last three sentences of instruction 9, was error. Although plainly the result of oversight, the giving of this erroneous instruction is not trivial, *State v. Maupin*, 63 Wn. App. 887, 822 P.2d 355, *review denied*, 119 Wn.2d 1003 (1992); a challenge to the sufficiency of the evidence implicates constitutional due process requirements and may be raised for the first time on appeal, *State v. Baeza*, 100 Wn.2d 487, 488, 670 P.2d 646 (1983).

If the instructions given and the jury's verdict plainly show the jury must have been unanimous as to the alternative means which was supported by sufficient evidence, this court may conclude the erroneous instruction did not affect the outcome, and the error was harmless. *State v. Bonds*, 98 Wn.2d 1, 18, 653 P.2d 1024 (1982), *cert. denied*, 464 U.S. 831 (1983). Here, instruction 10 told the jury in order to convict Mr. Martin it must find the element "[t]hat at the time the defendant was under the influence of or affected by intoxicating liquor" proved beyond a reasonable doubt. This instruction immediately followed the challenged alternative means instruction 9. Instruction 10 is insufficient to plainly show the jury was unanimous on the "under the influence" alternative since it conflicts with the last three sentences of instruction 9 and could have confused the jury. The error was not harmless.

Second, Mr. Martin contends the prosecutor engaged in improper closing argument.

The prosecutor argued Mr. Martin's claim he had been given the pickup was not credible because none of the witnesses who could have corroborated his story had come forward, and the reason for this was they did not want to commit perjury. Because this argument related to the charge of taking a motor vehicle, and the jury rendered a not guilty verdict, any error was harmless. However, Mr. Martin is correct, the argument is not well taken; there is no evidence to support it nor any from which even an inference can be drawn.

During rebuttal the prosecutor sought to explain the arresting deputy's failure to administer breath alcohol or field sobriety tests:

[T]he reason we don't have a BAC here is because the obvious effect of what he had to drink sometimes gives a close case. How many have heard of a condition drunk? How many have said I didn't know he was drunk until I saw him sober. That makes sense. Some of those people blow 300 BAC, that is very close to death. In fact they have to keep them in jail six hours so they are sober enough so they can go out and motivate on the street. But the legal limit is .100.

Contrary to Mr. Martin's characterization, this argument does not state or imply he is a "condition drunk". The thrust of the argument is that while some persons, termed condition drunks, may appear sober and testing is necessary to establish their inebriation, Mr. Martin was visibly intoxicated so testing was unnecessary. The argument has no basis in the record; no definition of condition drunk; there is no breath alcohol test evidence, nor explanation why not. The argument was improper.

Reversed.

THOMPSON, J., concurs.

SHIELDS, C.J. (dissenting) — Instruction 9 correctly defines the alternate means of committing the crime of driving while under the influence of liquor (DWI). I agree with the majority that the concluding part of the instruction, which tells the jury its determination may be based on either alternative and need not be unanimous, is error. However, taking the instructions as a whole and in context, I do not believe there is any possibility the jury could have been prejudicially confused. Therefore, I would hold the error was harmless and affirm.

Instruction 9, which contains two alternatives, was immediately followed by instruction 10,[2] which specifies the ele-

---

[2]Instruction 10 reads:

"To convict the defendant of Driving While Under the Influence of Intoxicating Liquor, in Count II, each of the following elements of the crime must be proved beyond a reasonable doubt:

ments that must be proved to convict the appellant. Instruction 10 limits the jury to a single alternative and requires proof of that alternative beyond a reasonable doubt. In addition, instruction 16[3] defines the alternative presented to the jury in instruction 10; it tells the jury what is meant by "under the influence of or affected by the use of intoxicating liquor". The instructions given and the jury's verdict plainly show the jury must have been unanimous as to the alterna-

---

"(1) That on or about the 9th day of June, 1991, the defendant drove a motor vehicle;

"(2) That at that time, the defendant was under the influence of or affected by intoxicating liquor; and

"(3) That the acts occurred in Yakima County, Washington.

"If you find from the evidence that elements (1), (2) and (3) have been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.

"On the other hand, if, after weighing all the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty."

[3]Instruction 16 reads:

"It is provided by the statutes of this state that it is unlawful for any person who is under the influence of or affected by the use of intoxicating liquor to drive any vehicle.

"The manner in which a vehicle is being operated does not itself establish that the driver of the vehicle either is or is not under the influence of or affected by intoxicating liquor.

"However, the manner in which the vehicle is being operated is a factor to be considered in light of all the proved surrounding circumstances in deciding whether the person operating the vehicle was or was not under the influence of or affected by intoxicating liquor. A person may drive an automobile in an apparently normal fashion and still be under the influence of or affected by intoxicating liquor; on the other hand, a person may drive a vehicle in an improper or erratic manner and not be under the influence of or affected by intoxicating liquor.

"Regarding the matter of being under the influence of liquor, the law recognizes that a person may have drunk liquor and not yet have reached the point at which that person may be said to be influenced by it when that person drives a vehicle; on the other hand, however, it is not necessary that the person be drunk or intoxicated in the sense that such terms are commonly used in order to be under the influence of the liquor.

"A person is under the influence of liquor when as a result of the consumption thereof, that person's ability to operate a vehicle is lessened to an appreciable degree. The phrase 'to an appreciable degree' means to any degree capable of being perceived or recognized by the senses. The question as to whether or not the driver of a vehicle is influenced by or affected by intoxicating liquor is one solely for the jury to determine from the evidence."

tive means which the majority concedes was supported by sufficient evidence; therefore, we may conclude confidently that the erroneous instruction in no way affected the outcome. *State v. Bonds*, 98 Wn.2d 1, 18, 653 P.2d 1024 (1982), *cert. denied*, 464 U.S. 831 (1983). The error was harmless and not prejudicial to the substantial rights of the appellant. *State v. Savage*, 94 Wn.2d 569, 578, 618 P.2d 82 (1980).

The circumstances of this case distinguish it from *State v. Maupin*, 63 Wn. App. 887, 822 P.2d 355, *review denied*, 119 Wn.2d 1003 (1992) and *State v. Green*, 94 Wn.2d 216, 616 P.2d 628 (1980), upon which *Maupin* relies. In both *Maupin* and *Green*, the "to convict" or "elements" instructions contained two alternative ways in which the charged offense could be committed. In those cases, the instructions did not take away the choice between the two alternatives, but specifically presented it to the jury.

I also believe any impropriety in the prosecutor's argument was harmless. The prosecutor based his argument on instructions 10 and 16, and never mentioned the other alternative contained in instruction 9. Defense counsel stressed the fact that no breath alcohol or field sobriety tests were administered to Mr. Martin and argued that the evidence was insufficient to establish Mr. Martin was under the influence of alcohol. Counsel suggested the arresting officer fabricated the intoxication allegation to cover her failure to control her K-9. dog.

In rebuttal, the prosecutor sought to explain the absence of tests, making the argument quoted in the majority opinion at page 690. I would continue the quotation, adding the prosecutor's next paragraph:

> We don't have a BAC here, we don't know what Mr. Martin would have blown, but the deputy said he was obviously intoxicated. And, sure, they've got a field sobriety test, but they give that when the person has a — who is not obviously intoxicated. He was obviously intoxicated.

The majority opinion at page 690 states "there is no breath alcohol test evidence, nor explanation why not." That is not altogether correct. The deputy explained she turned Mr.

Martin over to tribal police, then responded to two other calls before she saw Mr. Martin again some hours later. In any event, breath alcohol test evidence is not required for a DWI conviction. Even if the argument were improper, reversal is appropriate only if there is a substantial likelihood that the prosecutor's misconduct affected the jury. *State v. Wheeler*, 95 Wn.2d 799, 807, 631 P.2d 376 (1981). Mr. Martin has not shown a substantial likelihood that the jury was affected.

I would affirm the conviction.