IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 35550-1-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| J.A.A.,[†] | ) | |
| | ) | |
| | ) | |
| Appellant. | | |

LAWRENCE-BERREY, C.J. — J.A.A. appeals from a Yakima County Juvenile Court adjudication of guilt and disposition order for fourth degree assault. He contends the court erred in rejecting his self-defense claim, and the evidence was insufficient to support the adjudication. We affirm.

FACTS AND PROCEDURE

The State charged 17-year-old J.A.A. with fourth degree assault after he pushed his mother during a confrontation at their residence.

---

[†] We have changed the case title in accordance with an amendment to RAP 3.4 and the General Order for the Court of Appeals, *In re Changes to Case Title* (Wash. Ct. App. 2018), both effective September 1, 2018.

The facts are summarized from testimony at the adjudication hearing. J.A.A.'s mother testified that on the afternoon of July 6, 2017, she was awakened by her five-year-old daughter who told her that J.A.A. was in the house. J.A.A. had spent the previous night elsewhere and his mother told him that he was in trouble for going out without her permission. J.A.A. responded that he was moving out and was there to gather his belongings. His mother was worried about marijuana use and who J.A.A. was associating with. She told him that he could not leave the home. J.A.A. responded that he was going to be with friends because he would be better off there, and she should just let him because he was already 17 and could do whatever he wanted.

J.A.A.'s mother testified that she touched J.A.A's pants to try to search his pockets as he gathered his belongings. He said she could not touch him and accused her of "trying to rape him by touching his private parts." Report of Proceedings (RP) (Aug. 14, 2017, morning session) at 64-65. She then grabbed J.A.A. by the shirt to turn him toward her and try to stop him from leaving. They stood face-to-face within arm's reach and argued. J.A.A. called her a slob, a pig, and stupid. He placed his hands on her shoulders and pushed her backward. This caused her to fall some four feet straight onto her back side into pillows that were on the floor. She was not injured but immediately called police. She went to the living room and J.A.A remained in the bedroom gathering his clothes until officers arrived 10 minutes later. She testified that she and J.A.A had no conversation in the interim.

J.A.A. testified on his own behalf. He admitted to pushing his mother but claimed self-defense. He testified that on the previous evening (July 5) he was sitting in her car using a tablet and talking to friends. She ordered him to get out of the car but he refused. He tried to lock the car because he feared she would hit him as he claimed she had done on previous occasions, but that she got into the car and aggressively grabbed and scratched him. He said she chased him through the house and hit him with a cable, leaving scratches and marks, and then kicked him out of the house.

J.A.A. further testified that his mother was angry and yelling at him when he returned on July 6 to pack up his clothes. But he denied that she tried to check his pockets; he said it never happened. He admitted to insulting her and pushing her down with both hands when she grabbed his shirt. He said it was an "instant reaction" because he feared she would hit him like she had on the previous day and "[p]lenty of times" before. RP (Aug. 14, 2017, morning session) at 84, 88. He estimated that he stood seven inches taller than her. He did not show the police any marks on his body and admittedly had none at the time of the adjudication hearing. Nor did he report the July 5 incident or any prior alleged incident to police or Child Protective Services. J.A.A. also testified that prior to police arriving, his mother grabbed him and said he was not going anywhere, and then pushed him down into a chair in the living room.

In its written finding of fact 14, the court found J.A.A.'s claim of self-defense not credible. The court also ruled in conclusion of law 4 that the State proved beyond a reasonable doubt that J.A.A.'s use of force against his mother was not lawful. The court found J.A.A. guilty of fourth degree assault beyond a reasonable doubt.

J.A.A. appeals.

## ANALYSIS

J.A.A. argues the evidence was insufficient to support his adjudication of guilt for fourth degree assault. As the basis for his argument, he contends the court's finding of fact 14 that his claim of self-defense was not credible is not supported by substantial evidence, and that the court erred in its conclusion of law 4 that the State proved beyond a reasonable doubt that his use of force against his mother was not lawful. He concludes that because the State did not disprove that he acted in self-defense, the elements of assault are not met and the adjudication of guilt must be vacated and the charge dismissed. We disagree.

Due process requires the State to prove every element of the crime charged beyond a reasonable doubt. *State v. Baeza*, 100 Wn.2d 487, 488, 670 P.2d 646 (1983). In reviewing a challenge to the sufficiency of the evidence, we view the evidence and all reasonable inferences in a light most favorable to the State to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980) (plurality

4

opinion). A claim of insufficiency admits the truth of the State's evidence and all reasonable inferences that a trier of fact can draw from the evidence. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). We defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990). The court's findings of fact following a juvenile adjudication will be upheld if supported by substantial evidence, which is "'evidence sufficient to persuade a fair-minded person of the truth of the asserted premise.'" *State v. C.B.*, 195 Wn. App. 528, 535, 380 P.3d 626 (2016) (quoting *State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182 (2014)).

Under RCW 9A.36.041(1), "[a] person is guilty of assault in the fourth degree, if, under circumstances not amounting to assault in the first, second, or third degree, or custodial assault, he or she assaults another." "Assault is an intentional touching or striking of another person that is harmful or offensive, regardless of whether it results in physical injury." *State v. Tyler*, 138 Wn. App. 120, 130, 155 P.3d 1002 (2007).

With regard to self-defense, "[t]he use, attempt, or offer to use force upon or toward the person of another is not unlawful . . . [w]henever used by a party about to be injured, or . . . in preventing or attempting to prevent an offense against his or her person, . . . in case the force is not more than is necessary." RCW 9A.16.020. The right to raise

a self-defense claim extends to a child whose parent admits to use of force as parental discipline. *State v. Graves*, 97 Wn. App. 55, 62-63, 982 P.2d 627 (1999).[1]

But to raise a claim of self-defense, the defendant must first offer credible evidence tending to prove self-defense. *Id.* at 61. The burden then shifts to the State to prove absence of self-defense beyond a reasonable doubt. *Id.* at 61-62. "'To establish self-defense, a defendant must produce evidence showing that he or she had a good faith belief in the necessity of force and that that belief was objectively reasonable.'" *Id.* at 62 (quoting *State v. Dyson*, 90 Wn. App. 433, 438-39, 952 P.2d 1097 (1997)). "Evidence of self-defense is viewed 'from the standpoint of a reasonably prudent person, knowing all the defendant knows and seeing all the defendant sees.'" *Id.* (quoting *State v. Janes*, 121 Wn.2d 220, 238, 850 P.2d 495 (1993)).

J.A.A. contends he presented credible evidence of self-defense, as further supported by his mother's testimony. He states that she escalated their argument by initiating physical contact when trying to frisk his pant's pockets. But he testified that she did not try to frisk his pockets, so he cannot now claim it contributed to a perceived need for self-defense. The gist of his argument, then, is that in the moment his mother

---

[1] Under RCW 9A.16.100, the "physical discipline of a child is not unlawful when it is reasonable and moderate and is inflicted by a parent . . . for purposes of restraining or correcting the child." But the question whether a parent's use of force was reasonable is a separate inquiry from whether the child was initially entitled to raise a claim of self-defense. *Graves*, 97 Wn. App. at 62-63.

grabbed his shirt—and in the context of the previous night's events where she yelled at him, chased him through the house and hit him with a cable—he had a reasonable subjective fear of imminent injury that caused him to react quickly and push her away using no more force than was necessary. And then she pushed him into the chair where he sat until police arrived. In these circumstances, he concludes the State did not disprove beyond a reasonable doubt that he acted in self-defense and the court erred in concluding to the contrary. His arguments fail.

As stated in finding of fact 14, the court did not find J.A.A.'s self-defense claim credible. In finding of fact 15, the court incorporated by reference its oral findings made on the record. In its oral ruling, the court expressly found J.A.A. not credible and characterized him as a young man who has "pushed his mother to the absolute limit, not following her rules, choosing to freelance on his own whenever he feels like it." RP (Aug. 14, 2017, afternoon session) at 106. The court found there was not "anything from the testimony that there would be credible evidence to prove the need for self-defense, and certainly the absence of it would have to be proved beyond a reasonable doubt—I don't even think you reach the beyond a reasonable doubt with the testimony." *Id.* Given the lack of visible injuries, the court disbelieved J.A.A.'s account of his mother beating him with a cable. The court stated that from J.A.A.'s own testimony, it did not find he had a good faith belief in the necessity of force that was objectively reasonable. In rejecting J.A.A.'s self-defense claim, the court stated it could not "find that this would

have been a lawful use of force but in fact was an intentional act, when his mother is attempting to turn him around, to keep him from leaving. He pushed her down." *Id.* at 107.

As discussed, credibility determinations and the weight and persuasiveness of the evidence are the sole province of the trier of fact. *Camarillo*, 115 Wn.2d at 71. Accordingly, we do not disturb the court's finding of fact 14 and incorporated oral findings that J.A.A. did not raise a credible claim of self-defense. In turn, the court's written and oral findings also support its conclusion of law 4 that the State proved beyond a reasonable doubt that J.A.A.'s use of force against his mother in response to her grabbing his shirt was not lawful.

Absent self-defense, the evidence was sufficient for the court to find J.A.A. guilty of fourth degree assault beyond a reasonable doubt for pushing his mother. RCW 9A.36.041(1); *Green*, 94 Wn.2d at 221.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

WE CONCUR:

Lawrence-Berrey, C.J.

Siddoway, J.

Pennell, J.

8